```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────x

NEW LINE PRODUCTIONS, INC.
NEW LINE DISTRIBUTION, INC.
NEW LINE HOME ENTERTAINMENT, INC.
NEW LINE NEW MEDIA, INC., and
NEW LINE TELEVISION, INC.,

        Plaintiff,                            06 Civ. 13537 (CM)

   -against-

WILLIAM BROCK THOENE and
ROBERTA BODIE THOENE,

        Defendants.

────────────────────────────────────x

### MEMORANDUM DECISION TRANSFERRING CASE TO THE CENTRAL DISTRICT OF CALIFORNIA

McMahon, J.:

    William and Robert Thoene are professional authors who live in Nevada. They specialize in a genre they describe as "Christian historical fiction novels." They are currently writing a series of works called the "A.D. Chronicles," which focus on the time period around the biblical story of the birth of Jesus. This series includes two novels that have already been published – <u>Fourth Dawn</u> and <u>Fifth Seal</u> – and a third installment, <u>Sixth Covenant</u>, which is soon to be released. The Thoenes own the copyrights in these books.

    Plaintiffs – subsidiaries or affiliates of the Time Warner entertainment conglomerate – released a movie called "The Nativity Story" last December. As part of New Line's marketing strategy, The Parable Group and Outreach Inc. of San Diego, California, a provider of outreach goods and services to Christian churches, were promoting the movie. Parable invited the Thoenes to assist with the promotion of the film. The Thoenes thus discovered that "The Nativity Story" script appeared to have a number of "striking similarities" to their books.[1] They also learned that

---

[1] I assume that these "striking similarities" do not include such details as an announcement by the Angel Gabriel, the journey to Bethlehem, the birth of a child in a stable to a young girl named Mary (who was espoused to a man named Joseph), swaddling clothes, stars, shepherds, Wise Men from the East, etc. If ever there was a story that has fallen into the public domain, it is the tale that was made into the movie "The Nativity Story."

their own publisher, Tyndale House Publishers, Inc., had contracted to publish a "novelization" drawn from the screenplay for the movie. The Thoenes asked Tyndale to do a line by line comparison of the movie script with their novels, but Tyndale refused, citing a non-disclosure agreement with New Line. So the Thoenes, acting through their lawyer, went about trying to obtain an advance copy of the script from New Line in Los Angeles. They met with no success.

Despite their suspicions about the script's provenance, the Thoenes participated in teleconferences sponsored by Parable to publicize the movie. They also allegedly posted something on their web site (www.thoenebooks.com) that suggested some connection between their books and the movie, or that the Thoenes were somehow involved in the creation of the film.

Toward the end of 2006, various New Line entities filed this declaratory judgment action, seeking a declaration that the movie The Nativity Story did not infringe the copyright in the Thoenes' novelized version of the familiar biblical tale. Defendants have moved to dismiss this action for want of personal jurisdiction over them in New York, or in the alternative to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a).

The motion to transfer is granted.

**Statement of Undisputed Facts**

The following facts are undisputed: the Thoenes are citizens of Nevada. They live principally in Glenbrook, Nevada, which is on the Nevada/California border near Lake Tahoe. They also maintain a second house in Shell Beach, California, where they spend significant time. Shell Beach is located in the Central District of California

The Thoenes have never lived in New York and have visited only once (except to change planes) – a 1998 trip that combined business (a meeting with publishers) and pleasure (shows, sightseeing). They made plans to participate in future book tours in New York, but there is no evidence that those tours ever happened. They have no office in New York; they pay no taxes in New York; they own or lease no property in New York; they maintain no bank accounts in New York; they have no assets in New York. The do not have a telephone listing in New York and have no employees who work in New York.

The Thoenes are authors and they offer their books for sale – through their various publishers – in all fifty states, including New York. The works at issue are sold nationwide, but all marketing, placement and sales activity is taken care of by Tyndale, which is located in Illinois. Tyndale's day to day activity is not subject to any control by the Thoenes, although they do have input into marketing decisions relating to their books.

The Thoenes also permit their adult son to sell a limited number of copies of one of the A.D. Chronicles, Fourth Dawn, and other books by his parents, through his website "Thoenebooks.com." Their son lives and works in Bakersfield, California. He has never sold a copy of Fourth Dawn into New York, but he sold six other books written by his parents to New York purchasers between 2004 and 2007. The Thoenes do not receive royalties from sales made

by their son.

The Thoenes also maintain a website, www.thoenebooks.com,[2] on the servers of Pacific Online, Inc., located in Santa Rosa, California. Through the website, readers can e-mail the Thoenes or sign up to be on an e-mail distribution list. The website does not have a chatroom or instant message feature. The Thoenes can and do post copies of emails they receive from readers on their web site, but the readers themselves cannot post anything on the web site – it is not interactive.

The New Line plaintiffs are located in both New York and California, as might be expected of "the most successful independent film company in the world." New Line Productions, Inc., the owner of the copyright in the film, is a California corporation with "a" principal place of business in New York City. It also maintains an office in Los Angeles. New Line Distribution, Inc., which oversaw the domestic theatrical distribution of the film, is a California corporation with "a" principal place of business in New York City. New Line Home Entertainment, Inc., which distributed the film into the home entertainment market, is a New York Corporation with "a" principal place of business in New York City. New Line Media, Inc. is responsible for exploitation of the film in all new media markets. It is a Delaware corporation with "a" principal place of business in New York City. Finally New Line Television, Inc., which handles domestic television distribution, is a California corporation with "a" principal place of business in New York City. (I put the word "a" in quotation marks because it is an unusual locution; most corporations have but one principal place of business, and plaintiffs' use of the word "a" suggests that perhaps they have more than one. They do not identify where that alternative principal place of business might be.) Various senior officials of the New Line companies, including their General Counsel, are located in the New York City office, but nothing in the record suggests that these high-ranking individuals had much, if anything, to do with the facts that underlie this case.

The parties agree that potential witnesses in this case hale from numerous jurisdictions, including New York, Illinois, California, Washington and Nevada.

There is no dispute that this action could have been brought in California. The facts set forth in the Thoenes' affidavits reveal that they do business in California and so are subject to in personam jurisdiction there. A substantial part of the events giving rise to the plaintiffs' claim for declaratory relief occurred in the Central District of California.

**The Motion to Transfer Is Granted**

A district court may transfer any civil action, "For the convenience of the parties and witnesses, in the interests of justice" to "any other district where the action might have been brought." 28 U.S.C. § 1404(a). The parties seeking the transfer bear the burden of establishing that the transfer is warranted, and that the balance of convecience weights clearly in their favor.

---

[2] The implication of defendants' papers is that this is a different web site than their son's web site, notwithstanding the remarkably similar names of the two web sites.

Heyco, Inc., v. Heyman, 636 F. Supp. 1545, 1549 (S.D.N.Y. 1986).

Courts consider nine factors in deciding a motion to transfer:

1. *Convenience of the parties*: The record reveals that it would be considerably more convenient for the Thoenes to litigate in the Central District of California. Los Angeles is far closer to their primary residence (in Glenbrook, Nevada, which is close to Lake Tahoe) than it is to New York. The Thoenes' second home, where they spend time, is located in the Central District of California. They have no connection whatever with New York.

The New Line companies are bi-coastal, having offices in both New York City and Los Angeles. Nearly all of the named plaintiffs are California companies. Insofar as New Line Productions (the maker of the film and the owner of the copyright) is concerned, not only is it incorporated in California, but it has offices in both New York City and Los Angeles, and the record reveals that most of the same people appear to work in both offices. It could, therefore, d litigate as easily in California as in New York. New Line Cinema, the parent corporation of the plaintiff companies, is not a party, so its convenience (which it asserts lies in NewYork) is really of no relevance. The fact that New York is carefully identified as "a" principal place of business of the other New Line plaintiff companies suggests that the companies have more than one "principal" place of business, and from what the record reveals, that unidentified place appears to be a large city located in the Central District of California. This factor favors transfer.

2. *Convenience of the witnesses*: As noted above, potential witnesses include residents of Nevada (the Thoenes), employees from Parable Group (who are located in California), Outreach Inc., (also in California), the Thoenes' son (also California), representatives of Tyndale (located in Illinois), as well as New Line employees (located in California and New York – sometimes the same person is located in both) and someone (I am not sure who) who lives in Washington State. (Since access will be a key issue, it would be important to know where the author of the script for the movie lives). California is far more convenient to the California, Nevada and Washington witnesses, even if some of the West Coast residents are willing to come to New York to testify. Tyndale, which is in the middle of the country, is equally inconvenienced by having to testify on either coast. This factor favors transfer.

3. *Location of the relevant documents and relative ease of access of sources of proof*: Although this factor has become much less important in the era of electronic documents, the defendants' documentary proof is certainly not located in New York or anywhere close to New York, but in California, Nevada and Illinois. New Line's documentary proof will likely be found in California as well as New York, since the negotiations between the Thoenes and New Line concerning the purported similarities between plaintiff's film script and defendants' book took place in California between the Thoenes' California attorney and New Line in California. If there are copies of those documents in New York, it is only because they were sent there from California. This factor favors transfer.

4. *Locus of operative facts*: Anything the Thoenes did in connection with this lawsuit, they did far to the west of New York City. They engaged in promotional work for plaintiffs' movie in

California. They wrote The A.D. Chronicles in Nevada. They negotiated with New Line to try to get a copy of the script of the film in California, through a California attorney. New Line certainly did not make the movie "The Nativity Story" in New York City, and there is no indication in the record that the script was written there. This factor favors transfer.

5. *Availability of process to compel attendance of unwilling witnesses*: A New York court could not compel non-party witnesses from California to appear for trial. There are, to the best of the court's knowledge, no non-party New York witnesses, so the fact that a California court could not compel non-parties to testify there appears to be irrelevant. Tyndale, which is located in Illinois, cannot be subpoenaed to appear in either court. Neither can the mystery witness located in Washington; however, according to plaintiffs that witness is willing to come to New York, so I can fairly infer that he does not object to traveling and so would be willing to travel the far lesser distance to Southern California. This factor favors transfer.

6. *Relative means of parties*: This factor strongly favors the Thoenes, who have substantially fewer resources than the New Line companies, and who would find it less costly and more convenient to litigate closer to home. It favors transfer.

7. *Forum's familiarity with governing law*: Both this district and the Central District of California are familiar with federal copyright law and have substantial experience applying it, so this factor does not favor either jurisdiction.

8. *Plaintiffs' choice of forum*: Ordinarily, plaintiffs' choice of forum is entitled to considerable weight. However, "The weight accorded to a plaintiff's choice of venue is significantly diminished...where the operative facts have no connection to the chosen district." Royal & Sunalliance A/S/O v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001). Here, the operative facts relevant to this action are entirely West Coast-based and have nothing to do with New York – even with New Line's New York office (with which the Thoenes apparently did not deal). Therefore, the plaintiffs' choice of forum is largely, if not entirely, outweighed by other factors.

(9) *Trial efficiency and the interests of justice, based on the totality of the circumstances*: Frankly, it would be insulting to suggest that matters are any less congested in the Central District of California than they are here. We are both busy urban courts, located in the two largest cities in the United States. Neither court is lacking for work.

However, the totality of the circumstances clearly favors transferring this lawsuit to the Central District of California. A clear majority of the nine transfer factors favors moving this lawsuit to California. The court therefore grants the motion to transfer and directs the Clerk of the Court to transmit the file in this action to the Clerk of the United States District Court for the Central District of California forthwith.

Dated: August 1, 2007

_____
U.S.D.J.

PARTIES TO BE NOTIFIED BY ECF